**MOTEL MANAGERS TRAINING SCHOOL, INC., Appellant,**

v.

**Gordon MERRYFIELD, Appellee.**

**No. 19232.**

United States Court of Appeals Ninth Circuit.

June 11, 1965.

---

**28**

———◆———

Joseph Henry Wolf, Los Angeles, Cal., for appellant.

Marvin Greene, Wallenstein & Field, Los Angeles, Cal., for appellee.

Before BARNES and ELY, Circuit Judges, and PENCE, District Judge.

PENCE, District Judge:

The record shows the following facts were uncontradicted:

Appellant Motel Managers Training School, Inc., (the School) owned and operated a vocational training school in Los Angeles, California. It was essentially a correspondence school but also offered with its correspondence lessons demonstrative instruction in a motel. In the Los Angeles area the School's courses were sold directly to students. In other geographical areas it sold its courses through franchisees. The correspondence courses were made up at the School's headquarters in Los Angeles and all lesson grading, diplomas, and assistance in job placement were handled there, whether or not the courses were sold directly or through franchisees. The School was headed by Mrs. Pearl Kay Venuto, president, and on the staff were Ron Hibbard, director of franchises, Rudy Furst, franchise sales manager, and Fred Boyer, "counsellor" or "coordinator".

After it conducted its own market research in the summer of 1962 in Chicago, Illinois, the School determined to establish a franchised school in Chicago, and advertised in the September 2, 1962, issue of the Chicago Tribune for an "Associate to direct local operation with very high earning potential." On September 12, 1962, Mrs. Venuto wrote to the Illinois Department of Education asking for application forms to set up its vocational school in Illinois and stated "we only teach in the field of motel management. * * * The method of instruction is conducted by correspondence with lectures at a local motel on Saturdays only."

Appellee Merryfield answered the ad and met with Furst on September 8 and 13, 1962, and at the latter meeting Merryfield signed a written "Associate's Agreement" whereby Merryfield—therein called "Associate"—in consideration of his purchasing "50 Motel Managers Training Courses at $160 per course [$8,000] and mutual promises," was granted an exclusive franchise to sell the School's courses in the entire states of Illinois and Indiana. Among the "mu-

tual promises" were that the School would:

"(a) Assist Associate in selecting suitable office facilities [and] (b) * * * appropriate office furnishings.

"(c) Guarantee Associate an average income of * * * ($250.-00) per week for the first four weeks of operation * * * [after] the first interview with a prospective enrollee.

"(d) Supply a qualified sales representative (Counsellor) for a period of three weeks * * * [at the School's expense].

"(e) Supply all * * * course material * * * [and] (f) * * promotional material."

The Associate was to devote his "full-time services" to "managing the Franchise territory, directing sales of Motel training courses, [and] co-ordinating the instructional program * * *." The Associate agreed "to conform to all local, state and federal regulations and laws * * *." The franchise was to become effective October 1, 1962.

Merryfield immediately set about looking for office, equipment, etc., and wrote to Hibbard on September 20, "we are eagerly awaiting your instructions and suggestions as to the rental of an office, equipment, etc." On September 21, he again wrote to Hibbard and indicated that a certain office was available and he was ready to start operation immediately but would await suggestions from the School. On September 24 Mrs. Venuto wrote "the floor plan of possible office space * * * appears to be quite suitable and the rent seems to be quite in order." She recommended that Merryfield take the location "and have your telephone installed as soon as possible." She advised Merryfield that if the School's "coordinator" were not in Chicago by October 1, it would be in a couple of days thereafter. She also wrote that sales presentations, directive on advertising, etc., were being sent. On September 28 she notified him that the lessons

were being shipped to him. By September 29, Merryfield had signed a year's lease on the office, and made arrangements for the telephone and office furniture and was "awaiting the arrival" of the School's "coordinator". On October 2, 1962, Hibbard wrote that the "coordinator" would arrive at the Chicago office on Monday, October 8, and sent along a form of an ad for Merryfield to insert in the Chicago Tribune on Sunday, October 7. This ad promised to prospective students "on the job training" as part of the Chicago School's educational course. Merryfield ran the ad on October 7, 8 and 9.

On October 9, Hibbard sent to "Coordinator" Boyer forms for the DEPARTMENT OF REGISTRATION AND EDUCATION of the State of Illinois, together with a form of surety bond for Merryfield to obtain for his Illinois operations. In the accompanying letter, Hibbard warned Boyer not to mention to Dr. Easterbrook, the head of the Department of Education, Vocational Schools, of Illinois, that the School was going to hold on-the-job training classes at a motel because to do so "would only create further delays." On the same day Boyer wrote Hibbard that he hadn't yet arranged for an instructor (for on-the-job training)—"considering that there may be delay in the licensing of the School."

It was not until October 16 that Boyer filed with Dr. Easterbrook the completed forms for registration of the School with Illinois (making no mention therein of any on-the-job training). On the day before, Boyer had been officially advised by the State's enforcement officer of the Department of Education that the Chicago Motel Managers Training School was illegally advertising, interviewing, etc., and was not authorized to do business in the State of Illinois. Merryfield on the 16th, therefore, stopped all advertising and phoned Hibbard of the situation. On October 18, Dr. Easterbrook notified Merryfield that it would be a "couple of weeks" before the necessary procedure to legalize the sale of the Motel Man-

agers Training Courses in Illinois could be completed and that meanwhile Merryfield was not to advertise, solicit or sell courses in Illinois. At that time Merryfield had incurred considerable expense, and on October 19 he wrote Hibbard of all his woes and requested that Mrs. Venuto come to Chicago to attempt to give him some recompense and "clarify this situation."

Hibbard thereafter phoned Merryfield, and as confirmed by letter dated October 25, told him to advertise and enroll students in Wisconsin and Ohio, while waiting for Illinois approval! On October 26 Boyer advised Merryfield to contact a certain motel manager in regard "to the on-the-job training program. I told him that I thought we'd be ready to start in three or four weeks."

By letter also dated October 25 to Merryfield, Hibbard laid all the blame on Merryfield for the failure to be able, legally, to sell the courses in Illinois, writing that it was Merryfield's responsibility to get the necessary Illinois State licenses and that the agreement "clearly states 'Associate agrees to conform to all local, state and federal regulations and laws'." He also indicated that the $1,000 ($250 per week for four weeks) would be forthcoming. (He did not say when).

By October 30, Merryfield was disenchanted and wrote Hibbard that the cost of running the office without doing any business was mounting and that he was going to make a claim against the School for it. On November 2 Merryfield notified Mrs. Venuto that the Director of Education would not permit the School to advertise or solicit enrollments or interview prospects except at the office until after the Department had properly licensed the School, and that the Illinois Board would not meet until November 15th. On November 7 he notified her that he would be present on November 15 before the Vocational School committee when the School's application for a license to operate in Illinois would be

heard and asked that she be there also. At the November 15 hearing the application for a Certificate of Registration was denied and approval for licensing of the School's solicitors was withheld.

Mrs. Venuto did not appear in Chicago until November 19, and thereupon Merryfield demanded his money back, as well as the expenses he had been put to. On the 20th she notified Merryfield that when she got back to Los Angeles she would consult with counsel and let Merryfield know. He did not hear from her again.

Merryfield thereafter closed the office and returned to the School all the unused printed course material.[1] On January 29, 1963, he filed this diversity action, now before this court on appeal, seeking declaratory relief, as well as damages, claiming both fraud and breach of contract.

The School in its answer alleged that it was not required by the written agreement to be licensed as a vocational school by the State of Illinois, or required to qualify as a vocational school under that State's laws; that Merryfield under the written contract was required to secure his own solicitor's license. The School also counterclaimed that it had performed all of the conditions of the contract, but that Merryfield had breached the same.

At the jury-waived trial the district court found that Mrs. Venuto, Hibbard and Furst were agents of the defendant School and the acts and representations of each were within the course and scope of that agency, and held that there was no fraud on the part of the defendant. The court found that by the terms of the contract, for $8,000, the School sold to Merryfield an exclusive franchise to sell the School's Motel Managers Training Courses in Illinois and Indiana—said courses to consist of correspondence lessons and weekly classroom instruction— to be conducted in Chicago, Illinois, un-

---

1. On January 30, 1963, the School's application for licensure of its solicitors only was granted by the Illinois Depart· ment of Registration and Education. The School was never granted a certificate to conduct a vocational school in Illinois.

der the supervision of Merryfield; that the School was to assist Merryfield in selecting suitable office facilities and appropriate office furniture; that the School had guaranteed Merryfield an average of $250 per week for the first four weeks following the date of first interview of a prospective student; and that Merryfield was to open his office in Chicago, Illinois, place advertising, purchase office equipment, install telephone, and be ready to commence business on October 1, 1962—all of which obligations Merryfield fulfilled.

The trial court found that the School had failed to assist Merryfield both in selecting the office facilities and furniture, and failed to pay him his guaranteed net income of $250 per week. The court further found that Merryfield was unable to sell courses contemplated by the contract in Illinois because the School did not secure the required license or certificate of registration to conduct a vocational school therein. The court also found that the School never made any reasonable attempt to secure such license, even though the president of the School recognized by September 12, 1962, i. e., before it signed its contract with Merryfield, that such a license was a necessary prerequisite to performance by the School of its contemplated contract with Merryfield.

The court found that Merryfield had fulfilled all of the terms, covenants and conditions of the contract on his part, but that the School had failed to perform all of its obligations under the contract. The court found that Merryfield had spent $4245.28 in furtherance of attempting to carry out his obligations as a franchisee, but the net expenditures allowed by the court, after deducting monies received from the sales of courses and certain furniture disallowances, amounted to $2111.28 (in addition to his original $8000 investment).

The court concluded as a matter of law that the contract, having been prepared by the School, was to be construed against it; that Merryfield had performed all of his obligations under the Agreement, but that the School had breached the contract. The court found that the School was a vocational school as defined by Section 7 of the Vocational School Act of Illinois (Act) and was under a duty to secure a certificate of registration pursuant to Section 11 of the Act; that the courses which the parties contemplated would be sold under their contract, could not be offered in Illinois unless such certificate was issued to the School; that the School was ineligible for such certificate of registration until it qualified to do business as a foreign corporation in Illinois (Act, Sec. 35); that by failing to secure a certificate of registration from the State of Illinois, the School did not provide the essential element of consideration for which Merryfield contracted and such failure of consideration made performance by Merryfield and the School of the executory provisions of the Agreement impossible.

The trial court therefore granted judgment for Merryfield against the School in the sum of $10,111.28, plus certain interest and costs. The School's appeal from this judgment is now before this court.

In substance, the errors specified were that the court's findings of fact and conclusions of law were erroneous and not supported by substantial evidence. Although appellant listed seven "questions presented" to this court, all were encompassed in the one argument that there was no failure of consideration occasioned by any act or omission on the part of the appellant or any violation or breach by the appellant of the terms of the Agreement, and therefore the district court erred in awarding judgment to the appellee.

There was here no "mistake of law" on the part of the School. As was specifically set out in its letter of September 12, 1962, to the Department of Education, Trade School Division, of Illinois, the School knew full well that it must secure some type of license from Illinois before any franchisee could sell the School's training courses in that state.

**32**

Nevertheless, with the knowledge that it had not even determined that it would be able to secure such license, on September 13 the School offered the Illinois franchise to Merryfield, secured his signature on its contract, and on September 15, with the approval of its board of directors, its president signed that "Associate's Agreement".

The School was in the business of selling its franchises throughout the United States. Under the circumstances Merryfield had a right to and obviously did believe that the School had particular and peculiar knowledge of the licensing laws of Illinois when it offered that State's franchise to him and that the School had fulfilled all conditions precedent to enable its courses to be sold legally in that State as the parties contemplated. The record discloses that Merryfield had no experience in this vocational correspondence school field and did not have and could not be expected to have any knowledge of the law applicable to this specialized field when he in good faith undertook to fulfill his promises under the contract.[2]

The Agreement itself, whereby the School gave to Merryfield the Illinois franchise to sell its training courses and required that Merryfield devote his full-time services to directing sales of the courses and coordinating the instructional program, was founded upon the implied promise on the part of the School that as of October 1, 1962, Merryfield could legally sell the courses with the co-ordinated on-the-job instruction in Illinois, i. e., fulfill his executory promises.[3] In its decision, the trial court equated the generic expression "failure of consideration" with the obvious breach by the School of that implied promise, and correctly found for Merryfield.

As heretofore indicated, the School denied there was any such implied promise and attempted to place all the blame for Merryfield's failure to be able legally to sell the courses according to the Agreement by claiming that it was Merryfield's responsibility to secure the necessary legal authority by virtue of section (5) of the Agreement whereby the Associate agreed "to conform to all local, state and federal regulations and laws." The School insisted that he should have immediately applied for and could have secured a solicitor's certificate of registration.

The evidence here is replete with letters and other writings signed by Mrs. Venuto, Hibbard and Boyer that the "Motel training course" with its "instructional program" to be sold and co-ordinated by Merryfield[4] in Chicago, included on-the-job training there.

As was found by the trial court, the School was a vocational school as defined by Section 7 of the Act[5] and the School therefore was under a duty to secure a certificate of registration pursuant to Sections 10 and 11 of the Act before its correspondence course with on-the-job training instruction could be

2. Restatement of the Law, Contracts, § 599(a). (Cf. Illus. (3))

3. Williston on Contracts, 1937 Ed., Vol. 5, p. 3683.

4. See Associate's Agreement: "(2) Motel Managers Training School will have the exclusive right of the full-time services of Associate for the purpose of * * * directing sales of Motel training courses, [and] co-ordinating the instructional program * * *."

5. " 'Vocational School' defined 'Vocational School' means any school of instruction maintained or classes conducted by any plan or method and receiving compen-sation in any form for such instruction; and which offers courses of instruction in residence or by correspondence to prepare individuals:
        *       *       *       *       *

(2) to pursue a * * * business * * * or other non-professional occupation, * * *." Smith-Hurd Illinois Annotated Statutes, Chapter 144, § 17j.6. (This has no application to an out of state correspondence school soliciting students, teaching and carrying on such business entirely via interstate commerce. Air Conditioning Training Co. v. Majer, 1946, 324 Ill.App. 387, 58 N.E.2d 294.)

sold in Illinois.[6]   The School was ineligible for such a certificate of registration unless and until it qualified to do business as a foreign corporation in Illinois.[7]   This it never did.

Section 19 of the Act providing for the registration of solicitors and Section 21 which provides that the certificate of each solicitor shall be sent to the vocational "school by which such solicitor is employed, and shall be kept in the custody and control of the school," when read with sections 7, 10 and 11, supra, unmistakably demanded that the School be registered—first.

Even if Merryfield could have registered as a solicitor, nevertheless, as found by the trial court, until the School qualified to do business in Illinois, it would have been legally impossible for him to have sold the School's courses with the coordinated on-the-job training as understood and contemplated by both parties before, when and after the Agreement was signed.

The trial court also found that the School had also breached its contract in that its assistance to Merryfield in securing an office and office furniture, promised in the Agreement, had been so cursory as to amount to a nullity.   In the light of our affirmance that the School had breached its implied promise, supra, it is not necessary for us to determine whether such was a material breach.

Far from being clearly erroneous, the district court's material findings and conclusions were overwhelmingly supported by the evidence.

Affirmed.

---

6. *"Certificate of registration required* No * * * corporation shall conduct a vocational school in the State of Illinois without having been issued a certificate of registration by the Department." Id. § 17j.9.

   *"Application for certificate of registration* Every * * * corporation desiring to obtain a certificate of registration shall make a verified application * * * setting forth" the name of the school, officers and managing employees, specific fields of instruction offered, places

where instruction will be given, equipment available for instruction, maximum enrollment, qualifications of instructors, "[e]vidence that it maintains adequate correction service," financial resources, student enrollment agreement, advertising used, etc., with a commitment to provide a $2500 bond.  Id. § 17j.10.

